I will turn now to the next case on the calendar, 19-2405, Mills-Sanchez v. State University of New York. I assume that Mr. Vincent Yuba is present. Yes, Your Honor. Good afternoon. We're having trouble with the connection. Are you there? Yes, Your Honor. I'm here. Good afternoon. Good afternoon. Can everyone hear me clearly? Yes, Your Honor. Okay. Thank you so much, Your Honor. May it please the Court. This case is a case of employment discrimination because of race. I will be the first to admit that the complaint is long and lengthy. However, that is not a reason to not give the case its legal effect. With the recent events that have happened in our country with the racial injustice that we have seen, it has become clear that things should not be looked at in isolation, but in totality. And that is what this complaint is about. The complaint starts off with Ms. Sanchez's experience working for the defendant, the appellee in this case, from somewhere in 2009, working in an environment where black African Americans were called lazy, oppositional, lazy piece of shit, words that are not good to use for human beings, publicly in the office environment. And, you know, the management officials knew about it, but they didn't do anything. The environment that Ms. Sanchez worked in was an environment where it was openly marked, it was openly understood, and there was public marking that the establishment, the appellees, one of the appellees, would rather hire an unqualified white Caucasian employee rather than hire a qualified black employee. That was the environment that Sanchez worked under. And then the nightmare started when she started to see this happen. And, yes, some of the things that happened in this case happened outside of the limitation time, the statute of limitations, which in this case, the longest statute of limitations in this case would be four years, under 42 U.S.C. Section 1981. However, there are so many claims in this case that fall within the statute of limitations. It is the appellant's position that in dismissing her complaint, that the district court applied a very, very heightened standard in evaluating her claims, not even a plausibility standard, but an evidentiary standard under summary judgment that would be applicable in a summary judgment motion. Just as an example, the district court never mentioned the case of McDonald-Douglas at all in its decision. And under McDonald-Douglas, the standard is clear that what a plaintiff is required to plead is that she's a member of a protected class, that she's qualified for the position, that she's suffered an adverse employment action, and that the circumstances give rise to an inference of discrimination. This court has affirmed that position as recently as Little John v. City of New York in 2015. And this court has also made it clear that a plaintiff does not need to plead a prima facie case at the initial pleading stage. So having stated all of that, I'm going to go through Ms. Sanchez's claim under each of the courses of action. Under Title VII, which is her first course of action, her complaint pleaded that she applied for a job at RFMH in August and September 2017. She was rejected for the position. She's eminently qualified for the position. And the rejection was under circumstances that give rise to an inference of discrimination. And those circumstances are that once she went to the HR department to find out about the job positions, they would not give her any information about it. And then while this case was pending, she saw that the job opening was still being posted more than a year later after she applied for the job. And the law is clear under McDonnell-Douglas, where the Supreme Court suggested that that would be an inference of discrimination, where the employer keeps the job open after a qualified member of the protected class applies for the job. So that is for the Title VII action. Two job opportunities that she applied for in 2017 at RFMH. And then, of course, with retaliation, the complaint alleges a retaliatory scheme that started with her opposing discrimination at SUNY-RF, and then SUNY-RF having communication with RFMH, and that communication leading to her not getting a job, and then that continuing to the point of her being blacklisted after she was constructively discharged from SUNY-RF. And she alleges that those blacklisting is the reason why she hasn't gotten the job, as opposed to what my other colleague said, that, you know, she's just alleging that she's black, something bad happened to her, and therefore there must be a reason. There is reason. There were reasons for that. You know, there were interactions between SUNY-RF and RFMH where they called her a problem employee, and based upon her experience, there's reasonable ground to draw an inference of lawful discrimination against her. One minute. Okay. And then, with regards to her claim under New York state human rights law, she applied for a job in September 2015 with SUNY-RF. The job was given to ‑‑ she didn't get the job. She wasn't to receive any notice. One year later, she calls, and she sees that the job is still open, and they're still seeking application for the job, for the same job that she applied. And it goes on and on with all of our claims, and there's so many discrete separate claims that fall within the statute of conditions for each of the causes of action that are pleaded in the complaint. And respectfully, it's the position of the appellant that she has so many plausible claims in her complaint that are actionable under the law that they pleaded, based on the fact and the law. Thank you. Thank you, Mr. Oba. Judge Parker? I have no questions. Judge Rodgers? Yes. If I could get you to just clarify what you are arguing are your timely claims, Mr. Oba, because what seems clear to me was that you're attributing comments to Salisbury between 2008 and his death in 2013 and 14, but I wasn't sure that there were any allegations of offensive conduct except for those within the relevant time. Have I missed something? Yes, Your Honor. There was the disparate evaluation reports that were being given to her. I'm sorry, you were breaking up a little there. Could you just repeat that? Yes, there was this discriminatory job evaluation, performance evaluation that was given to Ms. Sanchez, where by the immeasurable standards, she performed higher than many similarly situated white Caucasian employees, but she didn't receive exceed expectation job performance evaluation, which she had received in the past when she performed even lower than that. And that kind of evaluation continued on until 2014, December 2014, when she reported it to HR management. And the response was – Are you saying there are evaluations every year that repeat that? I'm not sure I saw that. I want to make sure I didn't overlook anything. Yes, Your Honor. Based on the complaint, it started in 2010 with a manager or the director at the time refusing to give her that evaluation, and she continued to protest it year after year. Right. 2010 would be untimely, right? Yes, 2010 would be untimely, but it happened again in 2014. 2014? Yes, Your Honor. In 2014, she was not even evaluated. There was no performance evaluation at all done for her, and she reported it. So it wasn't that the evaluation was unduly critical. It was that she wasn't evaluated. Is that my understanding of what you just said? Yes, Your Honor. She wasn't evaluated, and then she reported it to HR. And then when she reported it, they backdated the evaluation and then made the evaluation very negatively, false and negative against her, which she refused to sign. So it's this failure and then the comments by the one employee that creates the hostile work environment? Yes, it's the comments by the employee. It's the disparate, unequal terms of employment where she will ask for reasonable accommodation. It won't be given to her. The complaint alleges that also, even in 2014, but the same reasonable accommodation will be given to other similarly situated white Caucasians, even to the extent that she had to walk around the schedule of one of her supervisors because the supervisor got an accommodation, but she wouldn't get the same accommodation in her own case up until December 2014. All right. I have no further questions. Thank you so much, Your Honor. Mr. Yuba, I have one question, just of a clerical sort. You're asking us to hold that this amended complaint is legally sufficient. Is that right? Or are you asking for another chance to amend it? Your Honor, I'm asking for both. I'm asking for it to be held that it's legally sufficient, and I'm asking because I do recognize, I do see the point that the judge is making, that there could be a better way of drafting it where it's easier to identify the claim, supporting the incident, supporting each claim. I'm asking, Your Honor, if the court deems it fit that they give us a chance to amend it the way that is easy to understand. We are open to that, Your Honor. But we respectfully request that the complaint not be thrown out because there's so many facts in the complaint that state a valid claim. We can reorganize the complaint. The district court dismissed this amended complaint under Rule 12b-6. Is that right? That's correct, Your Honor. And while the motion to dismiss was pending, you requested and you were granted leave to amend. Is that right? Yes, Your Honor, yes. But you did not, in fact, proceed to amend the complaint. Is that right? Yes. What happened was, and I explained it in my brief, at that period, I got a lot of notification, and I'm not making an excuse. It's just a fact of what happened. I got a lot of notifications in my email from ECF, and I think I mistook the one where the – because I have the complaint drafted. I mistook the one that asked me to file an amended – no, to file the motion for another notification. So I must have deleted it by accident. And then it was only when I got the decision that I realized, and I went through my record, and I realized that there was, in fact, a notification that I received. This was the only time that it ever happened to me, and I took steps to correct that. I took out a duplicate email getting notification because the one email got notification and it was forwarded to my email, and it was just confusing. So I took steps to make sure that doesn't happen again. So that's what happened, Your Honor. Okay. Mr. Uba, you've reserved three minutes for rebuttal. Is that right? Correct, Your Honor. Okay.  Thank you, Your Honor. Michael Billock for all the appellees. There are quite a number of them, so I won't list them all, but I represent them all during the appeal. May it please the Court, I'll first address Judge Braggy's question about the evaluation and what could conceivably – or what the appellant is saying could comprise a hostile work environment. There are no comments during the relevant time period that – within the relevant statutory time period. And as far as the evaluation from page A30 in the records, pages 183 to 185 of the amended complaint, they read in total. In or around December 2014, plaintiffs filed a complaint with Human Resources at our Apps Research Foundation, regarding the unreasonably denied accommodation and the absence of her performance appraisal. The plaintiff was then compelled to meet with her director to review an improperly backdated evaluation. At the meeting, the plaintiff was falsely accused of talking poorly of her core workers. As a result of these false accusations, the plaintiff refused to sign the evaluation. That's it. There's nothing else in the amended complaint about those allegations, and I would respectfully submit there's nothing in those paragraphs or in the rest of the amended complaint that raises an inference of discrimination. And as far as my colleague's arguments regarding the district court, arguing that the district court applied a heightened pleading standard, I obviously respectfully disagree. The standards, as this court is well aware, is Eiffel. Are the allegations in the complaint plausible? My colleague argues that the district court erred by not fighting McDonnell Douglas and Littlejohn, and claiming that the Littlejohn decision somehow requires that a court consider both Eiffel and McDonnell Douglas, or at least McDonnell Douglas. But Littlejohn affirms that Eiffel is not contrary to McDonnell Douglas. The decisions work together. A plaintiff alleging an employment discrimination case is required to meet some minimal burden that raises a plausible inference of discrimination. And Littlejohn says this burden is a minimal burden, but it's not nothing. It's not negligible. And as Eiffel states, it does have to be a plausible claim. And simply because an applicant doesn't get a position with nothing more, even if the applicant is a member of a protected class, doesn't create a plausible inference of discrimination. The complaint is obviously very long an accusation, but each of the accusations, and even if read in total, as my colleague urges the court to do, and a court should always read a complaint in total to see if the allegations are plausible. But even if read in total, the accusations are short on detail that render any of the claims plausible of any legal violation. And so having said that, if the court please, my argument will be even shorter than the attorney's arguments in the previous action. I believe the court understands our position, and I'll inquire if the court has any further questions for me. Thank you, Mr. Bullock. Judge Parker? Oh, no, I have no questions. Judge Raji? None, thank you. And I have none. Thank you very much. We'll hear now from Mr. Uber, who has reserved three minutes. Thank you so much, Judge. With respect to what my colleague talked about with, you know, the paragraph that he read out, just to be clear, when Ms. Sanchez was accused of talking poorly about her co-workers, the reason why she was accused of that is because she reported her co-workers. She reported the discrimination that she was getting in terms of the disparate treatment, in terms of the environment that she was working in, in terms of the reasonably denied accommodation that she was requesting. And that's why she was accused of talking poorly of her co-workers and then was given a backdated negative evaluation. Now, clearly, that's not the way the law requires that a complaint be handled. The law requires an investigation into an allegation of discrimination. The employer never did any investigation at all. In fact, they joined and they were part of it. They started it every single day. And those are the things that led to Ms. Sanchez being forced to resign, you know, because she reported, she faced this every day. She was passed over in promotion constantly. Jobs were given to other people that were not open up for her to apply. And she reported all of this. In the end, she was being accused of talking poorly of her co-workers, which led to her resignation in February, which we respectfully submit was constructive discharge because she got no remedy whatsoever from the employer. One minute. Yes. In conclusion, Your Honor, I respectfully ask that this court evaluate this case based on the facts of my client's case. Each case is different. Each story of discrimination is different. And I, I, I, I, I, I will count on the I'm counting on the wisdom of the court. And I believe that the wisdom of the court will lead the court to see that the complaint has various discrete claims, separate claims of employment, discrimination in hiring, in promotion, and even a hostile work environment. I know that the complaint is light on hostile work environment, but at least on those are failure to hire, fail to promote. And all of those kind of claims are very well detailed in the complaint. And they are plausible claims. Thank you, Your Honor. Thank you, Mr. Huber. Judge Parker, any questions? Oh, no. Judge Raji? No, thank you. Thank you. We'll reserve decision and thank both counsel for their appearance today.